IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | Criminal Indictment |
| v.   ) | |
| ) | No. 1:20-CR-466-AT-AJB |
| RICHARD TYLER HUNSINGER   ) | |

# UNITED STATES' RESPONSE OPPOSING THE DEFENDANT'S MOTION FOR RECONSIDERATION OF BOND

This Court detained the defendant pending trial based on its assessment of factors in the Bail Reform Act and its conclusion that it could not impose any conditions of release to ensure the safety of the community. Defendant has now filed a motion for reconsideration based on his father's assertion that the defendant can reside at the father's home in Virginia. However, such an assertion does not overrule the findings made by this Court or mitigate the danger Defendant poses to the community. Accordingly, the defendant's motion for reconsideration of the Court's detention order should be denied.

1. **Factual Background**

    **A. Defendant's Offense and Personal Characteristics**

    Through its investigation, the FBI associated Hunsinger to Twitter account Millions of Dead Landlords (aka @dickophrenic), which, on July

23, 2020, posted a flyer titled "Rally Against Fascism." The flyer listed the location for the rally as the DHS ICE Field Office (hereinafter, DHS Building). The DHS Building, which is privately owned but leased to the General Services Administration, is located at 180 Ted Turner Drive in Atlanta, Georgia. The Twitter account Millions of Dead Landlords appears to be the first to post the flyer.

On July 25, 2020, at approximately 11:30 P.M. several individuals wearing dark clothing and covering their faces vandalized the DHS Building. The individuals utilized rocks, cinder blocks, modified fireworks, Molotov Cocktails, tools consistent in appearance with hammers, and other materials to cause extensive damage to the DHS Building.

At least one Federal official, Federal Protective Service Inspector "K.C.," was performing official duties inside the DHS Building at the time the incendiary devices and other objects were being thrown at and into the DHS Building. Additionally, the individuals outside the DHS Building shined lasers at K.C.'s eyes.

Following the damage of the DHS Building, FBI responded and processed the crime scene. During the analysis of the crime scene, agents observed a large quantity of blood inside the hallway section of the first floor within the DHS Building. Agents also observed broken glass inside the DHS Building. This blood appeared to have been the result of a

laceration to one of the individuals who caused the damage to the DHS Building.

Agents subsequently contacted nearby hospitals to identify people who were treated for lacerations in the hours after the damage to the DHS Building. Local hospital records identify Hunsinger as a patient who sought treatment for a laceration in the hours immediately after the damage to the DHS Building. The emergency contact provided by Hunsinger was Kathryn Richards, whose relationship to Hunsinger is "significant other."

Agents reviewed security images provided by a local hospital, which appear to depict Hunsinger and Richards together outside the hospital. Hunsinger is seen wearing distinctive white shoes, dark pants or jeans, and what appears to be a keychain attached to his waistline. He also has medical bandaging on his left hand.

Agents have also reviewed security images and footage taken during the damage at the DHS Building on July 25, 2020. The images depict a white male of similar build to Hunsinger, wearing a mask, and actively causing damage to the DHS Building. Furthermore, the subject was wearing dark pants or jeans, white shoes, and a keychain at the waistline that are consistent with the clothing, shoes, and keychain seen being worn by Hunsinger at the hospital.

On July 26, 2020, at approximately 6:30AM, law enforcement officers observed a vehicle traveling on Ted Turner Drive near the DHS Building

with a white male (similar in appearance and build to Hunsinger) seated in the passenger seat. This man appeared to be recording the damage to the DHS Building with a cellphone. The passenger extended his middle finger toward the agents and appeared to mouth the phrase "Fuck You" as the vehicle passed by the building. Law enforcement officers on scene obtained the license plate number of the vehicle and records revealed the name of the registered owner is Richards.

The crime scene investigation conducted by FBI recovered several items, which indicated that the individuals inside the fenced area close to the DHS Building attempted to start fires within the DHS Building. Specifically, there were two bottles that contained wicks and traces of flammable liquids, which were recovered inside the DHS Building. The first bottle was intact and located inside the hallway near one of the broken windows. Burn marks were present on the wall just above where the bottle was located. A bottle of lighter fluid was also located near the broken window inside the DHS Building. The other bottle was partially broken and located inside the lobby area of the DHS Building.

An examination of the bottles conducted by the FBI determined they were "improvised incendiary devices" (IIDs), also known as "Molotov cocktails," which are destructive devices as they contain an ignitable material, breakable container, and a wick.

Agents also discovered a commercial pyrotechnic inside the DHS Building. This pyrotechnic had been modified by the addition of metal nails into the body of the pyrotechnic.

Agents have reviewed security images and footage taken during the attack at the DHS Building. The subject believed to be Hunsinger is observed lighting a suspected Molotov cocktail with his left hand while holding the bottle with his right hand. The subject is wearing white gloves, with what appears to be blood on his hand.

Agents requested and obtained License Plate Reader (LPR) records from Atlanta Police Department. A review of those records shows Richards's vehicle at the intersection of MLK JR Drive and Wynnwood Drive SW on July 25, 2020 at 8:49 PM, approximately four miles from the DHS Building a few hours before the start of the damage.

Agents obtained records from Twitter, Inc., regarding the account Millions of Dead Landlords that provided the telephone number as (703) 628-XXXX. Agents used open source records to determine that the number was registered to Hunsinger.

Agents reviewed records from Verizon Wireless for telephone number (703) 628-XXXX that listed the subscriber as "Tonda Hunsinger." An open records review of Tonda Hunsinger revealed she is the mother of Hunsinger.

Shortly after the damage to the DHS Building, the Twitter account Millions of Dead Landlords posted a photograph and several retweets of

videos of the incident on his Twitter account.  These photographs and videos were posted before media reporting of the damage to the DHS Building.

Agents have reviewed several recent tweets and retweeted content posted by Twitter account Millions of Dead Landlords.  On August 25, 2020, Millions of Dead Landlords retweeted the quote "holy fuck this is a major burn shit down moment."  The original content was posted by Twitter account "blue lives splatter."

On August 26, 2020, Millions of Dead Landlords retweeted the quote "Minneapolis police have killed again. Rioting is spreading in the city without hesitation. They will kill and kill as long as they exist.  If the system cannot stop them, we will.  Time's up."

On August 28, 2020, Millions of Dead Landlords retweeted "The police must be treated as occupiers and engaged with as such. We are in for the long and hot summer and a year that has still yet to fully unfold." Continuing on August 28, 2020, Millions of Dead Landlords posted a captioned image that stated, "Set fire to the next white anarchist autonomous zone that pops up.  Throw molotovs into any white anarchist-led "squat" you come across.  Treat these anarcrakkkas like cops because ain't no reason why colonizers is being given passes to 'reclaim' space on stolen land just to kill us."  Millions of Dead Landlords posted above the captioned image "okay sound's good".

-6-

On August 29, 2020, Millions of Dead Landlords retweeted "Looting rules.  Even if it's for no reason.  Stealing is dope.  Fuck retailers.  Who gives a shit.  Steal everything. Steal this tweet."

Toll analysis of the HUNSINGER's phone records indicate he sent and received approximately 72 texts SMS and MMS messages between the hours of 9:00 PM on July 25, 2020 through 8:00 AM on July 26, 2020. Two of the messages sent were Multimedia Messaging Service (MMS) messages that were 8.8 and 9.8 megabytes in file size, which are consistent with video and/or pictures type files.

### B. This Court's Detention Order

Upon Defendant's arrest, the United States moved for Defendant's detention pending trial.  The United States urged the Court to detain Defendant based on: (1) a charged crime of violence; (2) a felony that involves the possession/use of a firearm, destructive device, or any other dangerous weapon; (3) a serious risk that the defendant will flee; (4) a serious risk that the defendant will obstruct or attempt to obstruct justice; and (5) a serious risk that the defendant will threaten, injure, or intimidate a prospective witness or juror, or attempt to do so. (Doc.  11).

At the conclusion of the detention hearing, the Court noted the weight of the evidence against the defendant and found that Defendant was charged with the arson of an occupied building, and thus needed to be detained.  (*See* doc. 18); s*ee also United States v. King United*, 849 F.2d 485, 491 n.2 (11th Cir. 1988) (safety of the community is "much broader . . . than

might be commonly understood in everyday parlance"); *States v. Provenzano*, 605 F.2d 85, 96 (3d Cir. 1979) (defendant charged with union corruption, had prior convictions involving labor extortion and racketeering, and failed to provide evidence that if he was given a bail he would not continue to engage in the same type of activity, thus defendant posed a danger to the community and was detained).

Specifically, the Court noted that the alleged conduct involved setting fire to an occupied government building. The Court concluded that the strength of the evidence is strong and due to the nature of the circumstances, the defendant should be detained. (*See* doc. 18.) Subsequently, the defendant filed a motion for reconsideration of the bond and asserts that he can live with his father in Virginia. (Doc. 20). The Court's conclusion should not change.

Though Section 3142(i) only authorizes temporary release, defendant now invokes it to obtain the pretrial release that this Court has already denied. As developed below, defendant has failed to carry his burden of establishing that compelling circumstances justify his temporary release and, therefore, his motion should be denied.

## 2. Argument and Citation of Authority

"A detention hearing may only be reopened 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing,' and that information 'has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance

of the person as required and the safety of any other person and the community.'" *United States v. Edwards*, No. 1:05-CR-097-WSD/JFK, 2007 WL 9724771, at *1 (N.D. Ga. May 9, 2007) (Baverman, J.) (quoting 18 U.S.C. § 3142(f) and denying motion for bond without a hearing); *see also United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. March 24, 2020) (denying motion for reconsideration of bond without a hearing). Neither exists here.

### A. The Bail Reform Act

Under the Bail Reform Act, a defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk. *United States v. Salerno*, 481 U.S. 739, 749, 107 S. Ct. 2095 (1987); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"[R]esolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act:"

    1. The nature and circumstances of the offense charged, including whether it involves controlled substances, firearms, or minor victims;

    2. The weight of the evidence against the defendant;

    3. The history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and

-9-

community ties, past conduct, history relating to drug or alcohol abuse, and any criminal history and record concerning appearance at court proceedings;

    4. Whether the defendant was on probation or parole at the time of the alleged offense; and

    5. The nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

*United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 (D. Md. March 17, 2020).

Where, as here, the Court has determined that a defendant should be detained pending trial, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Relief under § 3142(i) is reserved for extraordinary circumstances. *United States v. Rebolla-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009). The defendant bears the burden of showing "a compelling reason" for temporary relief. *United States v. Dupree*, 833 F. Supp.2d 241, 246 (E.D.N.Y. 2011). "The standard imposed by the statute is one of necessity, not convenience." *United States v. Reese*, No. CR11-2294 RB, 2012 WL 13081673, at *1 (D.N.M. 2012).

Although the defendant invokes § 3142(i), which only authorizes "temporary release," by his motion he seeks pretrial release under the same conditions the Court previously denied.

### B. The defendant's detention remains appropriate.

Although Defendant now claims to be able to live in Virginia, that mere assertion does not overrule the findings made by this Court. Further, all the facts that the Court found to justify the defendant's detention remain true:

Defendant set fire to a building occupied by a federal employee, assaulted a federal employee, and damaged government property.

Thus, the defendant remains a danger to the community. As the Bail Reform Act provides, he should remain detained pending trial. 18 U.S.C. § 3142(e)(1).

### C. Defendant's father's willingness for Defendant to stay with him in Virginia does not change the analysis of the Bail Reform Act's factors.

Nothing about Hunsinger's father's new willingness to serve as a custodian in Virginia overrules the findings of this Court or materially changes the danger Defendant poses to others and the community.

Here, a grand jury returned an indictment charging defendant with arson, assaulting a federal officer, and damaging government property. Testimony at the preliminary/detention hearing established that defendant advertised a rally that resulted in extensive damage to the DHS

Building. This damage occurred while a Federal Protective Service Inspector was inside. Video surveillance and the investigation revealed that Hunsinger appears to be one of the individuals throwing flaming items into the DHS Building. Regardless of Hunsinger's father's position on being a custodian, which seems to have changed since his testimony, his willingness to allow Hunsinger to live with him in Virginia has not changed any of these facts or reduced the danger Defendant poses to others since the Court first ordered him detained.

### 3. Conclusion

The defendant has not provided the Court with a compelling reason for temporary release from his pretrial detention and, therefore, his motion should be denied.

Date: December 15, 2020

Respectfully submitted,

BYUNG J. PAK
United States Attorney

/s/RYAN K. BUCHANAN
Assistant United States Attorney
Georgia Bar No. 623388

600 U.S. Courthouse
75 Ted Turner Dr. SW
Atlanta, GA 30303
404-581-6000
404-581-6181 fax

## CERTIFICATE OF SERVICE

This is to certify that on this day I caused a copy of this document to be served upon defense counsel by filing it on the Court's electronic filing system, which causes a copy to be sent to:

    JOHN R. LOVELL

This 15th day of December, 2020.

                                            /s/Ryan K. Buchanan
                                            Assistant United States Attorney